RECEIVED IN ALEXANDRIA, LA.
JAN 25 2010
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| CHARLES RAY LACHNEY (D.O.C. #479864) | DOCKET NO. 08-CV-1100; SEC. P |
| VERSUS | JUDGE DEE D. DRELL |
| TIMOTHY WILKINSON, ET AL. | MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION

Plaintiff Charles Ray Lachney, proceeding pro se and in forma pauperis, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on July 25, 2008. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC) and is incarcerated at the Winn Correctional Center (WCC) in Winnfield, Louisiana. He named fifty-five defendants from WCC, including the wardens, all WCC staff "except for C/O Coleman, C/O Smith, C/O Felisha, and C/O Baireman," and all medical staff "except Mrs. Berts and Mrs. Tate." He requested better treatment while incarcerated at WCC, an unspecified amount of damages, and an order directing WCC to take him to the hospital.

Plaintiff was ordered to amend his complaint on March 19, 2009. Because he failed to comply with the order, it was recommended that the complaint be dismissed pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff submitted an objection to the report and recommendation claiming that his legal mail was being diverted or destroyed and he was being denied access to legal

materials.  An evidentiary hearing was conducted on November 12, 2009, after which Plaintiff was ordered to comply with the amend order of March 2009.  Plaintiff submitted a document on November 18, 2009, which appears to be an amended complaint responding to the amend order. [Doc. #21]

## Background

Plaintiff presents bizarre allegations that fifty-five defendants are liable to him for denying him medical care for bleeding from various parts of his body.  He also complains that his grievances were wrongfully denied; that he received harassment and threats from Defendants; that the defendants do not like him; and that he was denied medical care.

## Law and Analysis

### 1. Grievances

Plaintiff complains that Warden Wilkinson either denied him a grievance form or actually denied a grievance that Plaintiff filed. [Doc. #1, p.4] He also alleges that Mona Heyes, "the ARP lady," denied his ARP and threw it away. [Doc. #1, p.8]  Plaintiff has not alleged a constitutional violation.  An inmate has no constitutional right to have grievances or complaints addressed, investigated, or resolved.  See Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005).  Plaintiff's claims against Wilkinson and Heyes regarding his administrative remedy requests are frivolous.

## 2. Threats and Harassment

Plaintiff claims that Unit Manager Wiley threatened to kill him for telling her that he is bleeding, and that Officer Smithy said he would not help Plaintiff the next time he bled. [Doc. #1, p.6, 8] He alleges that, while in lockdown, Lt. Davis and Chief Glover threatened to kill him. [Doc. #1, p.8] Plaintiff claims that Officer Tolsen harasses him, and that Sgt. Powel told Plaintiff to close his wound up to stop the blood from coming out. [Doc. #1, p.6,9] He also alleges that Lt. Mike, who "plays a lot," told Plaintiff to stop crying and to "stop being a little b - - ch." [Doc. #1, p.7-8]

Verbal threats, verbal abuse, and harassment, without more, do not support a claimed constitutional violation. See Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983); Bender v. Brumley, 1 F.3d 271, 274 n. 4 (5 Cir. 1993). Moreover, 42 U.S.C. § 1997e was amended by the Prison Litigation and Reform Act (PLRA) of 1996. Under §1997e(e), prisoners are barred from recovering monetary damages for mental or emotional injuries "unless there is a prior showing of physical injury." Crawford-el v. Britton, 523 U.S. 574, 596 (1998). The "physical injury" required by § 1997e(e) must be more than de minimis but need not be significant. Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999)(citing Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997). Plaintiff has not alleged a

constitutional violation or physical injury by these defendants, and his claims for verbal abuse against Wiley, Smith, Davis, Glover, Tolsen, and Powel are frivolous.

### 3. Non-constitutional claim

Plaintiff complains that Chief Glover, Captain Knight, Cpt. Chatman, Cpt. Tailor, Carl Coleman, Capt. Maxwell, Lt. Vernon, Officer Price, Lt. Jordan, Lt. Lane, Officer Clark, Lt. Taylom, Lt. King, Officer Smiley, Mrs. Smiley, Mrs. Roggers, Officer Canadate, Mrs. McDonald, Mrs. Pat Thomas, Mrs. Richardson, Mrs. Jones, Mrs. Coleman, Mrs. Spence, Mrs. Smith, and Mrs. Woods either dislike Plaintiff, hate Plaintiff, hate people who bleed, hate everyone, and/or would allow Plaintiff to bleed to death. "To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Plaintiff has not identified or alleged the violation of a constitutional right with regard to these defendants; he does not have a constitutional right to be liked by the defendants. Also, as noted above, Plaintiff is barred from recovering monetary damages for mental or emotional injuries "unless there is a prior showing of physical injury." Crawford-el v. Britton, 523 U.S. at 596. Plaintiff has alleged no physical injury from these defendants, and his claims against Glover, Knight, Chatman, Tailor,

Coleman, Maxwell, Vernon, Price, Jordan, Lane, Clark, Taylom, King, Mr./Mrs. Smiley, Roggers, Canadate, McDonald, Thomas, Richardson, Jones, Mrs. Coleman, Spence, Mrs. Smith, and Woods are frivolous.

**4. Medical Care**

Plaintiff alleges that he was denied medical care by Warden Morgan, Warden Martin, Chief Lucas, Captain Gaskill, Lt. Braxton, Mrs. Brenson, Mrs. Lane, Officer Mac, Mrs. Walker, Mrs. Gaskill, Mrs. Tucker, the dentist, and Dr. Pacheco.

To prevail under 42 U.S.C. § 1983, Plaintiff must demonstrate that he was denied adequate medical care in violation of the Eighth Amendment to the United States Constitution. "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates **deliberate indifference to a prisoner's serious medical needs**, constituting an 'unnecessary and wanton infliction of pain.'" Easter, 467 F.3d at 463 (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991) (quoting Estelle v. Gamble, 429 U.S. 97 (1976))(emphasis added).

A prison official acts with **deliberate indifference** "only if he knows that inmates face a substantial risk of serious bodily harm and he disregards that risk by failing to take reasonable measures to abate it." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir.2006) (quoting Farmer, 511 U.S. at 847). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's

disagreement with his medical treatment, absent exceptional circumstances." Id. (citations omitted). A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. See id. (citations omitted).

A **serious medical need** is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required. Gobert v. Caldwell, 463 F.3d 339, 345 (5th Cir. 2006), (citing Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1187 (11th Cir. 1994)(*abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730 (2002))).

Plaintiff complains that the defendants denied him medical treatment for "bleeding of the body containing the eruption of blood;" "bleeding real bad" in his inner ear [Doc. #21]; bleeding from his penis into his boxer shorts on January 1, 2008, February 13, 2008, and August 13, 2007 [Doc. #1, p.7, Doc. #21, p.2]; bleeding on his leg on March 7, 2008 [Doc. #21, p.2]; "throwing up blood" on May 6, 2007 [Doc. #21, p.3]; "bleeding out of [Plaintiff's] lungs" [Doc. #21, p.3]; bleeding tonsils [Doc. #1, p.9]; "constant bleeding" [Doc. #21, p.3]; "slight coma" from loss of blood on July 14, 2008 [Doc. #21, p.4]; and "constant blood flow" [Doc. 21, p.6].

A hearing was conducted by the Court on Plaintiff's Motion for Temporary Restraining Order on November 12, 2009, at which time Plaintiff's medical records were submitted to the Court. [Doc. #20] Those records reflect that, upon transfer to WNC in March 2007, Plaintiff reported that he used an Albuterol inhaler and had been taking Dilantin since 2006. He reported having surgery to his left testicle in 2006, and the medical intake records from Bossier Medium Security Facility indicate testicular agenesis. Records from Bossier also indicate that Plaintiff had been to sick call at least once a week for four months and that Plaintiff had a history of visual hallucinations since 2000.

WNC medical records reflect that Plaintiff made sick and emergency calls for dizziness, "almost" having a seizure, requesting an HIV test, sexual assault[1], hemorrhoids, "changing colors," falling on his arm, change of duty status, groin pain from previous surgery, night sweats, sinusitis, nose bleeds, nightmares, insomnia, chronic rectal bleeding, leg pain after basketball game, boils, "something growing toward windpipe," "gagging on blood," shoulder pain, ear pain, neck pain, mouth pain, needing "blood drawn," "blood clots," "body shutting down," lost eyeglasses, "smelling blood, tasting blood, and bleeding a lot," requesting a circumcision, having hallucinations, "something growing in my

---

[1]Plaintiff was examined twice and transported to ER, but no evidence of sexual assault or trauma was found by WNC or the hospital physicians/nurses.

head," his body "changing colors," and his thought that he was going to die in his sleep.

Plaintiff was assessed and/or examined in sick call or clinic on the following dates in 2007: March 27, 29, April 3, 13, 16, 30, May 17, 19, 24, June 19, 20, 21, 22, 24, 27, 29[2], July 1, 2, 3, 6[3], 9, 13[4], August 1, 15, 17, 20, 21, 24, 27, September 7, 9, 28, 29, October 1, 5, 16, 18, November 5, December 1, 4, 26; the following dates in 2008: January 16, 17, 26, February 6, 8[5], 14, 19, 21, March 18, April 4, 19, 21, May 2, 9, 15, 19, 27[6], June 4, 19, July 6, 16, 21[7], August 6, 14, 15, 25, September 10, 19, 21, 22, 30, October 3, 6, 23, 25, November 14, 20, 24, 26, 27, and December 9, 19, 24; and the following dates in 2009: January 6, 28, February 6, April 3, 13, 19, 23, 24, May 7, 19, 21, 22, June 5, 24, 25, 26, 29, August 19, 30, 27, September 1, 2, 15, 17, 19, October 14, 16, and November 4, 8, 2009.[8] Plaintiff has sought and received medical care an average of almost once per week since he has been at WNC.

---

[2] Plaintiff was written up for malingering on this date.

[3] Transported to LSU eye clinic.

[4] Notation of malingering.

[5] Plaintiff complained of boils on his left and right buttocks and hemorrhoids, but examination revealed no boils, no redness, no hardness, no hemorrhoids.

[6] No show for sick call.

[7] Noted that there are no clinical findings to support Plaintiff's complaints; diagnosis of somatic delusional disorder

[8] The hearing on Plaintiff's motion for temporary restraining order was conducted on November 12, 2009.

Additionally, medical staff regularly saw Plaintiff twice a day for pill call and at least once a day during his frequent stays in medical segregation.

Plaintiff also received mental health treatment at WNC from Tangela Maxwell, RSW, CIT; Michelle Kennedy, MSW, GSW; Walter Buboltz, Ph.D.; Edward Lewis, MSW; and psychiatrist Patrick T. Wheat, MD.  Plaintiff's charts reflect diagnoses of depression, bipolar disorder, impulse control disorder, pedophilia, physical or sexual abuse, somatic delusional disorder, and borderline intellectual functioning.  Plaintiff received monthly psychiatric treatment while taking psychiatric medications.  He has received group and individual therapy multiple times per month every month since his arrival at WNC, and he even participates in *daily* group therapy every Monday through Friday since he was moved to the "mental health tier."  Plaintiff has also received vision and dental care every year that he has been at WNC.

Medication administration records from WNC indicate that through the years 2007-2009, Plaintiff was administered Albuterol inhalers, Dilantin, Celexa, Dibucaine ointment, Systane eye drops, artificial tears, Risperdol, Navane, Motrin, Prednisone, Naproxen, Trazadone, and Paxil. There are numerous incidents of Plaintiff refusing his medication, particularly the psychiatric medications and Dilantin.  However, each time Plaintiff asked to be placed back on his medication, his request was granted.

Plaintiff's medical records contain hundreds of pages of treatment notes documenting extensive medical and mental health care since the day of his arrival at WNC. It is evident that Plaintiff disagrees with the diagnoses made and the course of treatment at times, but that is insufficient to state a claim for inadequate medical care. See <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997)("Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs.")

5.  **Excessive Force**

Plaintiff alleges that he was subjected to excessive force on the following occasions and that he was denied medical treatment each time:

- November 4, 2007, Officer Bailey cut, choked, and punched Plaintiff [Doc. #1, p.6 & Doc. #21, p.5]

The medical file reflects that Plaintiff received medical care on November 5, 2007, was examined in the chronic care clinic, was given a blood test to check his Dilantin levels, and received an order for Dilantin. Plaintiff did not complain about Officer Bailey on that date nor did the doctor note any physical injuries during the examination. Plaintiff also attended his sex offender program meeting on November 7, 2007, and did not complain of being attacked by any officer.

- August 13, 2007, Charles Ray Jackson, Jr., entered his cell and "cut and tried to break" Plaintiff's penis [Doc. #1, p.6 & Doc. #21, p.5].

The medical records reflect a sick call request made by Plaintiff on August 13, 2007 wherein he states, "I need to go to the hospital for my arm because I messed it up at recreation. I fell on it. I need help." Plaintiff was treated for swelling in the left elbow due to his fall. Plaintiff made no mention in his sick call request or at his examination that he was assaulted. Moreover, it is evident that he was not denied medical care on this date.

10

- June 24, 2007, Officer Carpenter hit him in the ribs with a key, causing Plaintiff to bleed [Doc. #1, p.8 & Doc. #21, p.6]

Plaintiff met with a social worker on June 26, 2007, and he did not mention any incident with Officer Carpenter. He stated that he had not been taking his psychiatric medications, and he requested an appointment with the psychiatrist so that he could resume the medication treatment. He stated that he was having trouble with his temper and that the medication he used to take helped him with that and with anxiety. Plaintiff was treated by the psychiatrist the next day and prescribed antidepressants, mood stabilizers, and psychotherapy. Additionally, Plaintiff submitted a sick call form on June 27, 2007 complaining of hemorrhoids and his "body because I'm changing colors." He did not seek treatment for bleeding or rib pain, and he did not complain of any mistreatment by Officer Carpenter.

- April 13, 2008, Mr. Smiley cut him on his legs with a pocket knife, causing scarring [Doc. #21, p.6]

Plaintiff submitted an inmate request form on April 15, 2008 asking that he be placed back on Dilantin. He was told that he was taken off Dilantin due to his refusal to take it and to fill out a sick call form. Plaintiff submitted the sick call as instructed on April 17, 2008, and he was referred back to the doctor to have his prescriptions reinstated. Plaintiff made no complaints of any pain or incidents related to Mr. Smiley.

- June 31, 2008, Officer Tolson "slipped pills" into his juice on June 31, 2008 [Doc. #1, p.9 & Doc. #21, p.7]

Plaintiff saw Dr. Pacheco on July 6 and 16, 2008, and he did not mention any incident with Tolson. His complaint on those dates was that he "smelled blood in his system" and that he might die in his sleep. He had mental health evaluations on July 11 and 18, 2008, and he expressed no problems other than medical issues, for which he was being treated.

- October 31, 2008, Bobby Richards tried to kill Plaintiff by spraying him with Mace [Doc. #1, p.9 & Doc. #21, p.8].

Plaintiff makes only a conclusory allegation that Bobby Richards tried to kill him. He provides no factual allegations to support that claim, and there are no records of Plaintiff submitting a grievance to that effect.

In determining whether a claim of excessive force amounts to

11

an Eighth Amendment violation, the courts consider the extent of the injury; the need for the applied force; the relationship between the need and the force used; the threat reasonably perceived by officials; and efforts made to temper the severity of a forceful response. See Gomez v. Chandler, 163 F.3d 921, 923 (5th Cir. 1999). The physical injury suffered must be more than de minimis but need not be significant. Id. at 924. The core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).

Plaintiff did not present coherent factual allegations indicating that he was ever subjected to excessive force. The Court has the "power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless," such as "claims describing fantastic or delusional scenarios." Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Plaintiff's allegations are fanciful and delusional. He suffers from visual hallucinations and panic episodes, and the physical and mental health records make clear that Plaintiff has a documented delusional disorder.

After a review of Plaintiff's complaint and amended complaint, conducting a hearing on Plaintiff's motion for temporary restraining order, and a thorough review of Plaintiff's medical and mental health records, the Court is convinced that Plaintiff has

presented the best case that could be presented by him under these circumstances and that further amendment of the pleadings would serve no useful purpose.

**For the foregoing reasons, IT IS RECOMMENDED** that Plaintiff's claim be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous and failing to state a claim for which relief can be granted under 28 U.S.C. §1915(e)(2)(B).

**Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.**

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

**THUS DONE AND SIGNED** at Alexandria, Louisiana, this 25th day of January, 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE